## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF WISCONSIN

---

**JOEL WITTEMANN, RANDY UDELL, CAROL COUILLARD, MICHAEL LOOMIS, and TERRENCE O'NEIL,** individually and on behalf of the Class, and others similarly situated,

        Plaintiffs,

v.

**WISCONSIN BELL, INC.,**

        Defendant.

Court File No. 09-cv-440-wmc

---

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS

---

## I.    INTRODUCTION

This is a collective and class action lawsuit for unpaid overtime wages brought by Plaintiffs Joel Wittemann, Randy Udell, Carol Couillard, Michael Loomis, and Terrence O'Neil (collectively, the "Named Plaintiffs"), on behalf of themselves and all other Outside Plant Engineers employed by Defendant Wisconsin Bell, Inc. (hereinafter "Defendant"). In the Complaint, the Named Plaintiffs alleged that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"), and Wis. Stat. § 103.001, *et seq.* and the rules promulgated there under, Wis. Admin. Code § DWD 274.01 *et seq.*, (the "Wisconsin Overtime Statutes") by misclassifying them as exempt and thus failing to pay overtime wages when they worked more than forty hours in a workweek.

As explained more fully below, the parties have negotiated a settlement agreement (the "Settlement") that will resolve the claims of the Named Plaintiffs, the Opt-In Plaintiffs, and the putative Rule 23 Class Members. The total amount that Defendant will pay pursuant to the Settlement is set forth in the Joint Stipulation of Settlement filed herewith.

The parties reached the Settlement after participating in a day long mediation session on October 6, 2010. The parties believe the Settlement is fair, reasonable, and equitable and that it satisfies all criteria for settlement approval under Seventh Circuit law. With this joint motion, the parties seek preliminary approval of the Joint Stipulation of Settlement (Ex. 1) and request that the Court enter an order: (1) granting preliminary approval of the Joint Stipulation of Settlement; (2) provisionally certifying the proposed settlement class of Outside Plant Engineers pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in connection with the settlement process; (3) appointing Nichols Kaster, PLLP as Class Counsel for the Rule 23 Class Members and the Named Plaintiffs as Class Representatives; (4) approving the Parties' proposed notice of settlement; (5) approving the proposed class action settlement procedure; (6) approving the FLSA settlement; (7) setting a date for Plaintiffs to file a motion for final settlement approval and a petition for an award of attorneys' fees and costs; and (8) scheduling the Fairness Hearing.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In their Complaint, the Named Plaintiffs allege that Defendant violated the FLSA and the Wisconsin Overtime Statutes by misclassifying them as exempt employees and failing to pay them overtime wages when they worked more than forty (40) hours in a workweek. (D.E. 1.) In the Complaint, Plaintiffs indicated that they intended to seek FLSA conditional certification and Rule 23 class certification of all Outside Plant Engineers employed by Defendant within the three years prior to the filing of the Complaint and through May 16, 2009. (Id.)

Plaintiffs moved for Conditional Certification and Judicial Notice pursuant to 29 U.S.C. § 216(b) on October 30, 2009.  On February 2, 2010, this Court granted Plaintiffs' motion, conditionally certifying the following class of individuals who are or were employed by Wisconsin Bell, Inc. as Outside Plant Engineers at any time from February 2, 2007 to May 16, 2009.  (D.E. 90.)  Plaintiffs' Counsel mailed notice in accordance with the Court's Order and the opt-in period has now closed.  (Declaration of Timothy C. Selander ("Selander Decl.") ¶ 3.) Including the five Named Plaintiffs, there are now 63 Outside Plant Engineers involved in the case.  (Id. at 4.)

Since filing the Complaint, Plaintiffs' Counsel has investigated the facts and taken extensive discovery regarding the claims of Plaintiffs and the putative Rule 23 Class' against Defendant as well as Defendant's defenses.  Plaintiffs' Counsel propounded Interrogatories, Requests for Production of Documents, and Requests for Admission on Defendant.  (Id. at ¶ 5.) Plaintiffs' Counsel also reviewed thousands of pages of documents and tens of thousands of lines of electronic data produced by Defendant relevant to the job duties of Outside Plant Engineers and the potential damages.  (Id. at ¶ 6.)  Plaintiffs' Counsel also deposed a number of Defendant's management employees.  (Id. at ¶ 7.)  The five Named Plaintiffs all responded to Defendant's interrogatories and document requests, and two of the five were deposed by Defendant, along with two Opt-In Plaintiffs. (Id. at ¶ 8.)

In July 2010, the parties asked the Court to issue a stay to allow the parties to attempt to settle this case along with two related matters, Smallwood v. Illinois Bell Telephone Company, No. 1:09-cv-4072 (N.D. Ill.) and Wlotkowski v. Michigan Bell Tel. Co., No. 09-11898 (E.D. Mich.).  The Court granted the motion by amending the scheduling order to extend all deadlines in the case until October 28, 2010.  (Id.)  On October 6, 2010, the parties attended a full day

mediation with noted wage-and-hour mediator David Rotman of Gregorio Haldeman Piazza Rotman Frank & Federand.  (Selander Decl. ¶ 9.)  After a full day of arm's-length negotiations, the parties agreed to this Settlement.  (Id.)

## III.   SUMMARY OF THE SETTLEMENT TERMS

The details of the settlement are contained in the Joint Stipulation of Settlement, a copy of which is attached as Exhibit 1.

### A.  The Settlement Fund

The Parties agreed to settle all claims in the case as set forth in the Joint Stipulation of Settlement.   Following deductions for attorneys' fees, litigation expenses and costs, a contingency fund, settlement administrator costs, and Class Representative Stipends, 43% of the total settlement will be divided among the 63 Plaintiffs (the "FLSA Settlement Amount") and 16% of the total settlement will be divided among the 49 Rule 23 Class Members (the "Rule 23 Settlement Amount").

### B.  Eligible Employees

There are two groups of employees that are eligible to participate in this settlement.  The first group consists of the 63 Named and Opt-In Plaintiffs (collectively, "Plaintiffs") who affirmatively asserted FLSA claims by filing consent forms with the Court.  The second group consists of the 49 putative class members (the "Rule 23 Class" or the "Rule 23 Class Members").  As part of the settlement, the parties stipulate to certification of the following class: all individuals employed by Defendant in the job title "Manager, Outside Plant Planning and Engineering Design" at any time between July 14, 2006 and May 16, 2009 that are not Plaintiffs.  The Rule 23 Class Members are readily and individually identifiable from Defendant's business records.

## C.  Releases

Each eligible employee will receive a Notice of Settlement which will include a statement indicating that by affirmatively opting into the settlement, he or she releases and discharges Defendant from any and all claims, causes of action, or liabilities based on or arising out of the allegation that Defendant did not properly compensate its Outside Plant Engineers under any federal, state, or local statutory or common law for all hours worked, including the claims, causes of action and liabilities asserted in this lawsuit.  A copy of the proposed notice is attached as Exhibit 2.

## D.  Allocation Formula

The parties agreed to the following allocation to divide the FLSA Settlement Amount among the 63 Plaintiffs:

> Each Plaintiff will receive a minimum payment.  The balance of the FLSA Settlement Amount will be divided among the Plaintiffs *pro rata* based on individual estimates of lost wages.  The individual estimates of lost wages were calculated using the following factors: (1) each Plaintiff's number of eligible weeks; (2) each Plaintiff's average weekly salary; and (3) an estimate of overtime hours worked.  Each Plaintiff's number of eligible weeks was the number of weeks between July 14, 2006 and May 16, 2009 in which he or she was employed by Defendant in the Outside Plant Engineer position, *excluding any such weeks in which he or she recorded twelve or more hours of non-work time*.[1]  Each Plaintiff's average weekly salary was calculated using each his or her base salary as recorded on Defendant's payroll records over the period of the eligible weeks. Overtime hours worked were estimated using time actually recorded by Plaintiffs in Defendant's E-Link system.  Recognizing, however, that E-Link may not reliably reflect all hours worked by Plaintiffs, the parties agree to use an average number of overtime hours[2] for any Plaintiff whose E-Link records over the

---

[1]  The parties agreed for purposes of this settlement to exclude weeks in which an individual recorded twelve or more hours of non-work time (e.g. for vacation, holidays, leaves of absence, etc.) as these are weeks in which one could not have, or was unlikely to have worked overtime hours.

[2]  Based upon discovery taken during litigation, the parties agree for purposes of this Settlement that individuals who recorded more than forty hours in E-Link more than 83% of their work

eligible weeks results in a lower number of work hours, on average. The *pro rata* allocations to the Plaintiffs are set forth in Exhibit A to the Joint Stipulation of Settlement.

The parties agreed to the following allocation to divide the Rule 23 Settlement Amount among the 49 Class Members:

Each Class Member will receive a minimum payment in the amount of $500.00. The balance of the Rule 23 Settlement Amount will be divided among the Class Members *pro rata* based on individual estimates of lost wages. The individual estimates of lost wages were calculated using the following factors: (1) each Class Member's number of eligible weeks; (2) each Class Member's average weekly salary; and (3) an estimate of each Class Member's overtime hours worked. Each Class Member's number of eligible weeks was the number of weeks between July 14, 2006 and May 16, 2009 in which he or she was employed by Defendant in the Outside Plant Engineer position, *excluding any such weeks in which he or she recorded twelve or more hours of non-work time.*[3] Each Class Member's average weekly salary was calculated using his or her base salary as recorded on Defendant's payroll records over the period of the eligible weeks. Overtime hours worked were estimated using time actually recorded by each Class Member in the Defendant's E-Link system. Recognizing, however, that E-Link may not reliably reflect all hours worked by each Class Member, the parties agree to use an average number of overtime hours[4] for any individual whose E-Link records over the eligible weeks results in a lower number of work hours, on average. The *pro rata* allocations to the Class Members are set forth in Exhibit B to the Joint Stipulation of Settlement.

The settlement payments include sums for wages, liquidated damages, penalties, and interest. The parties agree that fifty percent (50%) of all payments, with the exception of Named Plaintiff/Class Representative Stipends, constitute wages, will be subject to W-2 reporting and normal payroll taxes and withholdings will be deducted pursuant to state and federal law.

---

weeks shall be deemed "reliable reporters." On average, the "reliable reporters" recorded 6.96 hours of overtime during their eligible weeks.

[3] The parties agreed for purposes of this settlement to exclude weeks in which an individual recorded twelve or more hours of non-work time (e.g. for vacation, holidays, leaves of absence, etc.) as these are weeks in which one could not have, or was unlikely to have worked overtime hours.

[4] Based upon discovery taken during litigation, the parties agree for purposes of this Settlement that individuals who recorded more than forty hours in E-Link more than 83% of their work weeks shall be deemed "reliable reporters." On average, the "reliable reporters" recorded 6.96 hours of overtime during their eligible weeks.

Defendant is responsible for the employer portion of all such payroll taxes and withholdings. The parties further agree that the remaining fifty percent (50%) and any Named Plaintiff/Class Representative Stipend constitute payment for liquidated damages and/or interest and penalties and will be reported on IRS Form 1099.

### E.  Attorneys' Fees and Litigation Costs

Plaintiffs' Counsel will apply for attorneys' fees in the amount of thirty-three and 1/3 percent (33 1/3%) of the total settlement fund.  Additionally, Plaintiffs' Counsel will seek reimbursement of their actual out-of-pocket litigation costs from the settlement fund.   Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiffs' Counsel will file a motion for approval of their attorneys' fees and costs concurrently with the motion for final approval of the settlement.

### F.  Service Payments

As part of the Settlement, the parties agreed to Named Plaintiff/Class Representative Stipends, otherwise known as "service payments" or "incentive awards" to each of the five Named Plaintiffs and Class Representatives.  These amounts are in addition to any payment that they receive as a *pro rata* settlement share as set forth above.  In light of their efforts resulting in a settlement on behalf of the Plaintiffs and Rule 23 Class Members, these Service Payments are reasonable.

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (citing In re Cont'l Ill. Sec. Litig., 962 F.2d 566, 571 (7th Cir. 1992)).  "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff

7

expended in pursuing the litigation." Id. (citing Spicer v. Chicago Bd. Options Exchange, Inc., 844 F. Supp. 1226, 1267 (N.D. Ill. 1993)). Courts in this Circuit have approved incentive awards as high as $20,000 per Named Plaintiff. See Berger v. Xerox Corp. Retirement Income Guarantee Plan, 2004 WL 287902, at *3 (S.D. Ill. 2004). Plaintiffs' request of $10,000 for the Class Representatives is well within the range of awards commonly approved. Retsky Family Ltd. P'ship v. Price Waterhouse LLP, 2001 WL 1568856, at *4 (N.D. Ill. 2001) (approving incentive award of $7,500); Gaskill v. Gordon, 1995 WL 746091, at *4 (N.D. Ill. 1995) (awarding named plaintiffs $6,000 each in incentive awards).

In this case, three of the five Named Plaintiffs and Class Representatives are current employees who took the bold step of initiating this action. They each responded to written discovery, provided declarations to Plaintiffs' Counsel when requested, and sat for depositions when called. The Plaintiffs and Class Members have substantially benefited from their actions. Indeed, without the efforts of the Named Plaintiffs and Class Representatives, this case would not have been brought and this settlement would not have been achieved. As a result of these efforts, the requested service payments are well justified.

### G. Settlement Administrator

The Parties have agreed to hire Analytics, Incorporated to perform the duties of Settlement Administrator. These duties include: (1) formatting, printing, and mailing the Notice of Settlement, Consent to Join Settlement Form and Release, IRS Form W-9, and Opt-Out Form (for Class Members); (2) processing returned Consent to Join Settlement Forms and Releases, IRS Form W-9s, and Opt-Out Forms; (3) issuing Settlement Payments to participating Plaintiffs and Class Members; (4) calculating and remitting to the IRS and state government entities all required payroll taxes; and (5) calculating and issuing IRS Form W-2s and IRS Form 1099s to

the participating Plaintiffs and Class Members.  Defendant agrees to cooperate with the Settlement Administrator to ensure that it has all of the information necessary to perform these tasks.  Plaintiffs' Counsel will be responsible for answering questions about the Settlement from Plaintiffs and Class Members.  .

## IV.     THE CLASS ACTION SETTLEMENT PROCEDURE

Federal Rule of Civil Procedure 23 establishes a defined procedure and specific criteria for settlement approval in class action settlements.  Rule 23(e) describes three steps in the settlement approval process:

(1)     Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)     A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

See Fed. R. Civ. P. 23(e); see also Manual for Complex Litigation, § 21.632 (4th ed.).  This procedure, used by courts in this Circuit and endorsed by the leading class action treatises, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  See Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg"), §§ 11.22, et seq. (4th ed. 2002).  With this motion, the parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed settlement, certifying the settlement class, and approving the proposed notice.

Upon the Court's order granting this motion, the parties submit the following proposed schedule for the remaining steps of the settlement process:

(1)     The Settlement Administrator will mail the Notice of Settlement to the

9

eligible employees within one day of the Court's order granting preliminary settlement approval.

(2)     Plaintiffs and Class Members will have thirty (30) days to review the terms of the settlement and return all required documents.

(3)     Plaintiffs will file a Motion for Final Settlement Approval and Motion for Attorneys' Fees and Costs within three business days of close of the notice period.

(4)     A fairness hearing will be held within seven days of the close of the notice period for the purpose of (a) determining the fairness, adequacy, and reasonableness of the Settlement; (b) determining Class Counsel's attorneys' fees and costs; (c) approving the settlement and stipulation; and (d) entering Judgment.

(5)     Defendant will disburse the Total Settlement Amount to the Settlement Administrator within seven days of the close of the notice period.

(6)     Following the Court's Order granting final approval of the settlement, granting final approval of the stipulation, and entering Judgment, the Settlement Administrator will mail the settlement funds to the participating Plaintiffs and Class Members.  In addition, the Settlement Administrator will disburse Plaintiffs' Counsel's approved attorneys' fees and costs to Plaintiffs' Counsel.

(7)     Participating Plaintiffs and Class Members will have 120 days to cash their settlement checks.  Following that date, any unclaimed funds and any funds remaining in the contingency fund will be donated to a cy pres fund agreed upon by the Parties and approved by the Court.

Although this is an aggressive schedule, it benefits Plaintiffs and the Class Members because issuing payments in December 2010, rather than January 2011 (or later), will result in significant administration cost savings.

## V.     PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE

The Seventh Circuit has recognized the "overriding public interest in favor of settlement of class action suits."  Donovan v. Estate of Fitzsimmons, 778 F.2d 298, 307 (7th Cir. 1985) (internal quotations omitted).  Class actions and other complex matters are unique in that the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential

benefit the class could hope to obtain.  See Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); see also Newberg § 11:41 (gathering cases).

The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the individual claims, would be impracticable.  The Settlement, therefore, is the best vehicle for these employees to receive the relief to which they are entitled in a prompt and efficient manner.

### A.  Courts Review Class Action Settlements Using a Two Step Process.

District Courts in the Seventh Circuit review class action settlement proposals using a two-step process.  Armstrong v. Bd. Of Sch. Dirs. Of City of Milwaukee, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998).  The first step is a preliminary approval and occurs before notice is mailed.  Id.  The Court's role at the preliminary approval step is to "determine whether the proposed settlement 'is within the range of possible approval.'"  Id.  In other words, the "purpose . . . is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  Id.  In the event the Court finds that the settlement falls "within the range of possible approval" notice is issued and a fairness hearing is scheduled.  Id.

### B.  The Settlement is Within the Range of Possible Approval.

Settlement of class action litigation is favored by the federal courts.  Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996).  Although the Court should determine whether the Settlement is "within the range of possible approval," the proceedings to approve a settlement should not be

transformed into an abbreviated trial on the merits.  See, e.g., Mars Steel Corp. v. Cont. Ill. Nat'l Bank & Trust Co., 834 F.2d 677, 684 (7th Cir. 1987).   As the Seventh Circuit wrote in Armstrong:

> Because settlement of a class action, like any litigation, is basically a bargained for exchange between litigants, the judiciary's role is properly limited to the minimum necessary to protect the interest of the class and the public.  Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

616 F.2d at 315.  In addition, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations.  Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers, 212 F.R.D. 400, 410 (E.D. Wis. 2002).

### 1.   The Settlement was reached after serious, informed, and arm's-length negotiations.

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements.  Mangone v. First USA Bank, 206 F.R.D. 222, 226 (S.D. Ill. 2001); see also In re Mexico Money Transfer Litigation, 164 F. Supp. 2d 1002, 1019-20 (N.D. Ill. 2000) (giving "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"); Alliance to End Repression v. City of Chicago, 561 F. Supp. 537, 548 (N.D. Ill. 1982) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel"); Susquehanna Corp. v. Korholz, 84 F.R.D. 316, 320 (N.D. Ill. 1979) (a settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate); Berenson v. Faneuil Hall Marketplace, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.").  Here, the Settlement

was the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action wage-and-hour litigation and with the legal and factual issues of this case in particular. The parties respective counsel are experienced in the litigation, certification, trial, and settlement of wage-and-hour cases, including nationwide class actions similar to this case. Settlement negotiations in this case took place before noted class action wage-and-hour mediator David Rotman at a mediation held on October 6, 2010, which culminated in this Settlement. Both parties' counsel supports the Settlement as fair and reasonable.

> **2.    The Settlement provides substantial relief to Plaintiffs and the Class Members.**

The total settlement amount is on its face substantial. From this amount, all FLSA Plaintiffs and Rule 23 Class Members who choose to participate will receive a pro rata payment based on individualized damage calculations. The specific amounts are listed in Exhibit A.

The parties agree that the Settlement represents a good value given the risks of continued litigation, even though Plaintiffs' recovery could be greater if Plaintiffs succeeded at trial and survived an appeal. If the litigation were to continue, Plaintiffs would face a number of high stakes risks before trial that could have limited, or even eliminated their claims, including decertification of the FLSA Plaintiffs, Rule 23 class certification, and dispositive motions on liability, liquidated damages, willfulness and the fluctuating workweek. Weighing these risks against the benefits of a Settlement which provides substantial and immediate monetary compensation to the FLSA Plaintiffs and Rule 23 Class Members for their unpaid overtime hours, the settlement amount is reasonable.

### 3.   The Settlement treats all Plaintiffs and Class Members fairly.

All allocations were derived from damages which were calculated with the same formula, using each eligible employee's earnings, weeks worked, and hours worked as the variable factors.

### 4.   Attorneys' fees and costs

Consistent with Plaintiffs' Counsel's fee agreement with Plaintiffs, Plaintiffs' Counsel will receive a sum of not more than 33 1/3% of the Settlement Fund in attorneys' fees and an additional amount in costs, if such fees and costs are approved by the Court.  Defendant agrees not to oppose Plaintiffs' Counsel's application to the Court for the payment of attorneys' fees and costs.

## VI.   CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the parties seek to certify a settlement class of all Outside Plant Engineers employed by Defendant between July 14, 2006 and May 16, 2009.  The members of the settlement class are readily and individually identifiable from Defendant's business records.  The Court should find that the proposed settlement class satisfies the numerosity, typicality, and adequacy of representation requirements of Rule 23(a), as well as at least one of the subsections of Rule 23(b), and issue an order: (1) provisionally certifying the settlement class; (2) appointing Plaintiffs' Counsel as Class Counsel; (3) appointing the Named Plaintiffs as Class Representatives; and (4) approving the form and manner of notice.

As discussed in more detail below, all of the certification requirements for settlement purposes are met for the proposed settlement class, and Defendant consents to certification for settlement purposes only.  See Newberg § 11.27 (When the court has not yet entered a formal

order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).  Certification of the settlement class and appointment of Plaintiffs' Counsel as Class Counsel also serves the practical purpose of avoiding the time and cost associated with litigating class status.  See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995).

A class action may be maintained under Rule 23 if all the Rule 23(a) requirements and at least one of the Rule 23(b) requirements are satisfied.  The Rule 23(a) requirements are:

(1) Numerosity: the class is so numerous that joinder of all members is impracticable;

(2) Commonality: there are questions of law or fact common to the class;

(3) Typicality: the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) Adequacy: the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In order to satisfy Rule 23(b)(3), the Court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" (the "Predominance" requirement), and "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (the "Superiority" requirement).  Fed. R. Civ. P. 23(b)(3).

## A. Numerosity

The numerosity requirement is satisfied when the class "is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  To establish numerosity, the party seeking class certification must identify the size of the class.  In re AT&T Mobility Wireless Data Servs. Sales Litig., 2010 WL 3190108 (N.D. Ill. Aug. 11, 2010) (citing Arreola v. Godinez, 546 F.3d

788, 797 (7th Cir. 2001)).  Satisfying the numerosity factor is generally "not difficult to ascertain if a class approach would be useful to avoid the practical problems of trying to join many named plaintiffs or otherwise clog the docket with numerous individual suits." Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A., 657 F.2d 890, 895 (7th Cir. 1981).  Here, the proposed class easily satisfies the numerosity requirement.  Defendant reviewed its business records and determined that there are 49 class members.  Courts in the Seventh Circuit have repeatedly found that smaller classes satisfy the numerosity requirement. See In re AT&T Mobility, 2010 WL 3190108, at *5 (gathering cases in which numerosity was satisfied with 18 to 150 class members).  With respect to the practicality of joinder, it would not only be extremely expensive and time-consuming to litigate the claims of the class members individually, but it would also "clog the docket" of the Western District of Wisconsin because the vast majority of the class members live and work in the district.

### B.  Commonality

Rule 23(a) requires a showing that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  In the Seventh Circuit "[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998) (quoting Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992)).  A single common issue may be sufficient to satisfy the commonality requirement. Blihovde v. St. Croix County, Wis., 219 F.R.D. 607, 616 (W.D. Wis. 2003).  A common nucleus of operative fact is present when a defendant engages in "standardized conduct toward the members of the proposed class." Id.  Class certification cannot be defeated merely because there are some factual variations among the members' grievances. Allen v. City of Chicago, 828 F. Supp. 543, 551 (N.D. Ill. 1993).

16

For settlement purposes only, the parties agree that (1) all Outside Plant Engineers were classified as exempt from the overtime pay requirements of federal and state law; (2) all Outside Plant Engineers were reclassified to non-exempt and overtime eligible under federal and state law on May 16, 2009; and (3) all Outside Plant Engineers held the same job title and job description.

Courts routinely certify misclassification cases like this one, concluding that the central question—whether employees were wrongfully classified as exempt from overtime pay—is common to the class.  See, e.g., Perkins v. S. New Engl. Tel. Co., 669 F. Supp. 2d 212, 224 (D. Conn. 2009); Carter v. Anderson Merchandisers, LP, 2008 WL 4948489, **6-7 (C.D. Cal. Nov. 18, 2008); Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 156 (S.D.N.Y. 2008); Alba v. Papa John's USA, Inc., 2007 WL 953849, at *6 (C.D. Cal. Feb. 7, 2007); Krzesniak v. Cendant Corp., 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 203-04 (S.D.N.Y. 2006); Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 607-08 (C.D. Cal. 2005); Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 267 (D. Conn. 2002).  Accordingly, common questions of law and fact exist and certification is warranted.

### C.  Typicality

Rule 23(a)(3) requires that "the claims . . . of the representative parties are typical of the claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  "The commonality and typicality requirements of Rule 23(a) tend to merge [because] [b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Gen. Tel. Co. v. Falcon, 457 U.S. 147, 157 n.13 (1982).  The purpose of both requirements is to "ensure that only those plaintiffs or

defendants who can advance the same factual and legal arguments may be grouped together as a class." Mace v. Van Ru Credit Corp., 109 F.3d 338, 341 (7th Cir. 1997).  A "plaintiff's claim is typical [of the class] if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." Keele, 149 F.3d at 595 (quoting De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)).  "Typical does not mean identical, and the typicality requirement is liberally construed." Gaspar v. Linvatec Corp., 167 F.R.D. 51, 57 (N.D. Ill. 1996) (citing Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 185 (N.D. Ill. 1992)).

Plaintiffs and the class of Outside Plant Engineers satisfy the typicality requirement for the same reasons this Court determined they were "similarly situated" under the FLSA.  Namely, they were all classified as exempt prior to May 16, 2009.  On that day, they were all reclassified to non-exempt.  They all had the same job title and same job description.  These facts are more than enough to satisfy the typicality burden. See, e.g., Damassia, 250 F.R.D. at 156 (typicality met because "all class members' claims, including those of named plaintiffs, are based on the same course of events and legal theory," and minor differences in job duties did not defeat class certification); Nerland v. Caribou Coffee Co., Inc., 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) (finding typicality because each of the class members worked in the same position as the named plaintiff and all challenged their employer's classification decision); Lee, 236 F.R.D. at 203-04 ("Plaintiff and the prospective class were subject to the same general employment scheme.  Even if the class members' facts are somewhat different than Plaintiff's, the claims are similar enough to meet the typicality element."); see also Alba, 2007 WL 953849, at *6; Krzesniak, 2007 WL 1795703, at *7; Wang, 231 F.R.D. at 608; Scott, 210 F.R.D. at 267.

**D.  Adequacy**

Rule 23(a)(4) requires Plaintiffs to fairly and adequately represent the interests of the proposed class.  Fed. R. Civ. P. 23(a)(4).  The adequacy determination has two elements: (1) Plaintiffs' attorneys must be qualified, experienced, and able to conduct the litigation; and (2) the class representatives' interests must not be antagonistic to the class members' interests.  Sec'y of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1982).  The parties have stipulated that adequacy of both the Named Plaintiffs and Plaintiffs' Counsel.

### 1.    Plaintiffs' attorneys are qualified to represent the class.

In considering whether class counsel is adequate, a court must consider:

(i)    the work counsel has done in identifying or investigating potential claims in the action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Plaintiffs' Counsel is well-qualified to represent the proposed classes. Nichols Kaster, PLLP has been class or collective counsel in dozens of class and collective actions around the country.  Harlow v. Sprint Nextel Corp., 254 F.R.D. 418, 425 (D. Kan. 2008) ("After reviewing the record, the court is satisfied that ... Nichols Kaster, PLLP ...satisfy[ies] these criteria and will adequately represent the interests of the class as counsel"); Sibley v. Sprint Nextel Corp., 254 F.RD. 662, 677 (D. Kan. 2008) (same); Carter v. Anderson Merchandisers, LP, 2008 WL 4948489 at *8 (C.D. Cal. Nov. 18, 2008) ("Plaintiff has demonstrated sufficiently that his counsel [Nichols Kaster] will represent the proposed classes adequately.  Counsel has identified and investigated the claims in this action, has extensive experience handling class actions similar to this one, has demonstrated knowledge of the

applicable law, and has adequate resources to represent the proposed classes."); <u>Cervantez v. Celestica Corp.</u>, 253 F.RD. 562, 574 (C.D. Cal. 2008) (Nichols Kaster "has identified and investigated the claims in this action, has extensive experience handling class actions similar to this one, has demonstrated knowledge of the applicable law, and has adequate resources to represent the proposed classes."); <u>Kasten v. Saint-Gobain Performance Plastics Corp.</u>, 556 F.Supp.2d 941, 960 (W.D. Wis. 2008) ("Under [the Rule 23(g)] factors, plaintiffs' lawyers [Nichols Kaster] are clearly adequate."); <u>Alberts v. Nash Finch Co.</u>, 245 F.R.D. 399, 411 (D. Minn. 2007) ("The Court has examined [Nichols Kaster's] background and qualifications and is fully satisfied that [they] will prosecute this action competently and vigorously."); <u>Stewart v. CenterPoint Energy Resources Corp.</u>, 2006 WL 839509, at *1 (D. Minn. March 28, 2006) ("Plaintiffs' Lead Counsel [Nichols Kaster] are qualified to represent the Class").

Plaintiffs' Counsel has actively and vigorously pursued the claims of the named Plaintiffs in this case since its inception in July 2009. Namely, Counsel identified potential claims, retained local counsel, initiated this action to assert class members' rights with regard to those claims, moved for and won a motion for conditional certification, and proceeded with discovery, which included taking the depositions of corporate representatives, defending three plaintiff depositions, and reviewing and producing thousands of pages of documents and data. (Selander Decl. ¶¶ 5-8.) In addition, Plaintiffs' Counsel negotiated the substantial Settlement at issue in this Motion. (<u>Id.</u> ¶ 9.) The Court should, therefore, appoint Nichols Kaster as Class Counsel pursuant to Fed. R. Civ. P. Rule 23(g).

### 2.    The Named Plaintiffs' and class members' interests are aligned.

In order to satisfy the adequacy requirement, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." <u>Amchem</u>

20

Prods., Inc., 521 U.S. at 625-26 (citations and internal quotations omitted).  In addition, "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims."  Rosario, 963 F.2d at 1018.  In this case, the Named Plaintiffs, Opt-In Plaintiffs, and Class Members allege the same injury: that Defendant misclassified them as exempt employees during the same period of time and based on the same grounds, and as a result were denied overtime pay.  Because the Named Plaintiffs have the same injury and seek the same redress as the class members, there are no antagonistic interests.


### E.  Certification is Proper Under Rule 23(b)(3).

Rule 23(b)(3) permits class certification if (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The objective behind the two requirements of Rule 23(b)(3) is to promote economy and efficiency.  Walker v. Bankers Life Ins. & Cas. Co., 2007 WL 2903180, at *7 (N.D. Ill. Oct. 1, 2007) (citing Fed. R. Civ. P. 23(b)(3) Advisory Committee notes).  When common issues predominate, class actions achieve these objectives by minimizing costs and avoiding the confusion that would result from inconsistent outcomes.  Id.  That Plaintiffs easily meet the Rule 23(a) requirements is a strong indication that Rule 23(b)(3) is also satisfied.

Certification under Rule 23(b)(3) will allow the class members to opt out of the settlement and preserve their right to seek damages independently.  See Brown v. Title Ticor Ins. Co., 982 F.2d 386, 392 (9th Cir. 1992).  This approach protects the due process rights of the putative class members and is consistent with the Supreme Court's decision in Ortiz v.

Fibreboard Corp., which explains that due process requires an opportunity to opt out of significant monetary relief.  527 U.S. 815, 846-48 (1999).

### 1.    Common factual and legal questions predominate.

The predominance requirement is satisfied when the named plaintiffs can offer proof on a class-wide basis through their individualized claims.  Rodriguez v. Ford Motor Credit Co., 2002 WL 655679, at *5 (N.D. Ill. Apr. 19, 2002).  "The basic question is whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Blihovde, 219 F.R.D. at 620 (quoting AmChem Prods., 521 U.S. at 623 (internal quotations omitted)).  Where, as here, "the class is challenging a uniform policy, the validity of that policy predominates over individual issues and class certification is appropriate."  Id. (citing Falcon, 457 U.S. at 147 n. 20).  The predominance inquiry "should particularly focus on the liability issue . . . and if the liability issue is common to the class, common questions predominate over individual ones."  Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 148 (S.D.N.Y. 2002) (internal quotation omitted).  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986).

In misclassification cases like this one, courts regularly find that whether an employer misclassified a group of employees and improperly deprived them of overtime sufficiently predominates over any individualized inquiry.  See Perkins, 669 F. Supp. 2d at 224 (holding that the issue of whether Level One managers for an AT&T subsidiary were misclassified as exempt employees predominated over any individual issues); Damassia, 250 F.R.D. at 160 (finding predominance despite some variances in job duties where "there is no evidence that they are of such a magnitude as to cause individual issues to predominate"); Walker, 2007 WL 2903180, at *9 (finding that whether defendant misclassified a group of employees as independent

contractors predominated over any individual questions); <u>Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (concluding that the question of whether the class members are supposed to be paid overtime for hours worked over forty was "about the most perfect question[] for class treatment"); <u>Wang</u>, 231 F.R.D. at 613 (rejecting argument that the court must "engage in an individualized inquiry into each [employee's] duties" to make an exemption determination); <u>Scott</u>, 210 F.R.D. at 267-68 (holding that whether defendant improperly classified employees was "the common liability issue that predominates over all other factual and legal issues"). This case is no different. All members of the class are unified by common factual allegations – that they were misclassified by Defendant through May 16, 2009 and worked overtime hours for which they were not paid. They are also unified by a common legal theory: that Defendant's pre-May 16, 2009 policy violates the Wisconsin Overtime Laws.

The only individual question is the amount of damages to be awarded to each class member. However, individualized inquiry into damages does not defeat class certification. <u>Carnegie v. Household Int'l, Inc.</u>, 376 F.3d 656, 661 (7th Cir. 2004). Rather, "Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues" including bifurcating the liability and damages trials or appointing a magistrate judge or special master to determine individual damages. <u>Id.</u> The mere presence of individualized damages does not preclude class certification.

In sum, common factual and legal questions unify all class members and predominate over any issues that affect them individually because all class members have the same legal claim: they performed the same type of work on behalf of their employer and did not receive proper wages in exchange for those services.

### 2.    The "manageability" element is irrelevant in this context.

It is well-settled that in a settlement-only class certification a district court is not required to inquire into whether a trial of the class claims would be difficult to manage.  Amchem Prods., Inc., 521 U.S. at 620.  In this case, the request for certification arises in the settlement context and as a result there is no risk that the proposed settlement class would be unmanageable at trial.

### 3.    A class action is a superior mechanism.

Rule 23(b)(3) also requires a showing that a class action is superior to other methods of adjudicating the claims.  Fed. R. Civ. P. 23(b)(3).  Superiority is established when a class action would achieve "economies of time, effort, and expense," and promote uniformity of decisions without sacrificing procedural fairness.  AmChem Prods., Inc., 521 U.S. at 615.  In assessing the superiority requirement, courts consider the following non-exclusive factors:

    (1)    the class members' interests in individually controlling the prosecution or defense of separate actions;

    (2)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

    (3)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (4)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  In this case, the Rule 23 class members do not have an interest in individually controlling the litigation.  The overwhelming majority of class members received notice of the case and 58 joined.  The Court can therefore find that the Class Members who chose not to opt-in to the FLSA collective action do not have an interest in individually controlling the litigation.  Furthermore, no Class Member has filed a separate individual action or a competing class action.

The FLSA Plaintiffs and putative class members have limited financial resources with which to prosecute individual actions. Requiring class members to initiate separate, individual actions would waste valuable resources given the extensive litigation and discovery that has already taken place in this case. Regarding the forum, the Western District of Wisconsin is appropriate because all Rule 23 class members were employed by Defendant in Wisconsin, many live and work in the District, and Defendant regularly conducts business there.

## VII.   THE PROPOSED CLASS NOTICE IS  APPROPRIATE

The content of the proposed Notice of Class Action Settlement, which is attached as Exhibit 2, fully complies with due process and Rule 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The Notice proposed here satisfies each of these requirements. It describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Accordingly, the detailed information in the proposed Notice is more than adequate to put Class Members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).

## VIII.   THE COURT SHOULD APPROVE THE FLSA SETTLEMENT

Because the FLSA Plaintiffs' FLSA claims are distinct from the Rule 23 Class Members' Wisconsin Overtime Law claims, Plaintiffs seek approval of the settlement of the FLSA claims separately.   The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.   See McKenna v. Champion Int'l Corp., 747 F.2d 1211, 1213 (8th Cir. 1984) (explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date").   Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 n.8 (l1th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. Id. at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. Id. at 1354.

In this case, the settlement was the result of vigorously contested litigation.  The parties contested the scope of coverage under the FLSA and the amount of unpaid time worked. Recognizing the uncertain legal and factual issues involved, the parties engaged in a mediation with an experienced mediator and ultimately reached the settlement pending before the Court. During the litigation and at the mediation, Plaintiffs and Defendant were both represented by counsel and the settlement was the result of arm's-length negotiations.  Accordingly, the parties request that the Court approve the FLSA Settlement.

## IX.   CONCLUSION

For all of the foregoing reasons, the parties respectfully request that the Court enter the Order attached hereto (1) granting preliminary approval to the parties' proposed settlement; (2) provisionally certifying the proposed settlement class of Outside Plant Engineers pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in connection with the settlement process; (3) appointing Nichols Kaster, PLLP as Class Counsel and the Named Plaintiffs as Class Representatives; (4) approving the proposed notice of settlement; (5) approving the proposed class action settlement procedure; (6) approving the FLSA settlement; (7) setting a date for Plaintiffs to file a motion for final settlement approval and to petition for an award of attorneys' fees and costs; and (8) scheduling the Final Fairness Hearing.

Dated:  November 18, 2010

By:   */s/ Timothy C. Selander*\
Paul J. Lukas, MN Bar No. 22084X\
Matthew H. Morgan, MN Bar No. 304657\
Timothy C. Selander, MN Bar No. 0387016\
**NICHOLS KASTER, PLLP**\
4600 IDS Center, 80 South 8th Street\
Minneapolis, MN  55402\
Telephone: (612) 256-3200\
Fax:    (612) 215-6870

**Attorneys for Plaintiffs, others similarly situated, and the Putative Class**

By:   */s/ Kenneth W. Gage*\
Kenneth W. Gage, IL Bar No. 6291335\
**PAUL, HASTINGS, JANOFSKY & WALKER LLP**\
191 North Wacker Drive, 30th Floor\
Chicago, Illinois 60606

Stephen B. Mead\
Senior Attorney\
AT&T Services, Inc.\
225 West Randolph Street\
Chicago, IL 60606, Floor 25B\
Tel: (312) 727-3506\
Fax: (312) 845-8976

E-Mail: Stephen.Mead@att.com

**COUNSEL FOR DEFENDANT
WISCONSIN BELL, INC.**